MELISSA B. MORTON v. ELIAS H. REYNOLDS.

A license to build a fence upon a division line between two adjoining tracts will authorize a fence to be placed on the division line so as to occupy an equal space on each side of the mathematical line of division for a reasonable width, but will not authorize the erection of a fence which, like a worm or zigzag fence, is not built on the division line, but crosses it from side to side and encloses parts of the adjoining tracts.

On *certiorari* to the Monmouth Pleas.

Argued at February Term, 1883, before Justices DIXON and MAGIE.

For the prosecutor, *H. H. Wainright.*

For the defendant, *C. J. Parker.*

The opinion of the court was delivered by

MAGIE, J.    The action removed by this *certiorari* was one of trespass *quare clausum fregit,* originally brought in a justice's court by Morton against Reynolds.    After judgment for defendant in that court, an appeal was taken to the Common Pleas of Monmouth and the case was retried.    Upon the trial of the appeal, the case shows that Reynolds was proved to have done acts upon Morton's land, which were trespasses for which recovery should have been had in the action unless the privilege of doing those acts had been conferred by a license from Morton, the land-owner.    The license claimed consisted in an agreement between these parties, who were the owners of adjoining lands, that each should build a fence upon a certain part of the division line between said lands.    The fence built by Reynolds was a worm or zigzag fence, of which the supporting stakes of each alternate end of the panels were about three feet beyond the actual division line, and each panel crossed the division line from one side to the other.

The trespasses claimed in the action were the building and maintaining of this fence. The judgment of the court of appeal was also in favor of Reynolds, and this writ of *certiorari* was then sued out by Morton.

There was nothing else shown in the case to justify these trespasses except the license. The question therefore is whether the court below erred in holding (as they must have done) that the license proved authorized the erection of such a fence and so justified these trespasses. If, on a proper construction of the license, no authority was given for such a fence, then the court erred in matter of law.

The license was to build a fence upon the division line. Since a fence is necessarily made of some material substance, it must occupy space. Such a license will doubtless confer a privilege to place a fence so as to occupy an equal space on each side of the actual mathematical line of division. For this purpose a reasonable amount of space of the licensor's land may be used. What is a reasonable amount of space for that purpose is to be determined by the situation of the land and the uses to which it is devoted, and perhaps, to some extent, by the usage and custom of the locality. *Newell* v. *Hill*, 2 *Metc.* 180. Usage and custom, however, cannot control the requirements of the license.

The question whether the fence in question was one occupying no more than a reasonable amount of Morton's land does not, however, arise here. For, under the facts, we are of opinion that this was not a fence within the privilege given by the license. That privilege extended to a fence placed upon the division line. This fence cannot be fairly said to be placed or built on the division line. On the contrary, it crosses that line from side to side for its whole length. It deprives Morton of the use of portions of land not occupied by the fence. If this can be done for the width of three feet, it would seem it could be done for a greater width. Either result is plainly not contemplated by the license. If land of Reynolds is thereby left on the Morton side of the fence, it could not, either legally or practically, be used by Morton.

The construction of this license as justifying these acts was therefore incorrect, and for this error the judgment below must be reversed, with costs.